525 P.2d 854

**Philip RICHARDSON and Helen B. Richardson, Plaintiffs-Appellees,**

v.

**Cleo Hendricks DUGGAR, Defendant-Appellant.**

**No. 9914.**

Supreme Court of New Mexico.

Aug. 23, 1974.

Rehearing Denied Sept. 4, 1974.

OPINION

OMAN, Justice.

Plaintiffs sought to quiet their title to 17.917 acres of land lying in the S½ SE¼ of a designated section. The westerly 8 acres lie in the SW¼ SE¼. These 8 acres are the only lands with which we are concerned on this appeal.

The district court entered a final judgment and decree quieting title to the entire 17.917 acre tract in plaintiffs. Defendant, Cleo H. Duggar, who claimed the said westerly 8 acres, has appealed. We affirm.

Plaintiffs claimed, and the district court found and concluded, that plaintiffs had acquired title to these 8 acres by adverse possession pursuant to the provisions of § 23–1–22, N.M.S.A.1953. The trial court held that under this statute the plaintiffs were required to prove that they and their predecessors had been in adverse possession of the 8 acres continuously and in good faith for a period of ten years. This possession must have been under color of title, and plaintiffs must have paid taxes on the property during these years. The parties agree with this holding.

It was stipulated that defendant is the holder of the regular chain of title to the SW¼ SE¼ beginning with the patent thereto and that she and her former husband paid taxes thereon for the years 1959 to 1972, both inclusive.

Defendant concedes that plaintiffs and their predecessors in title had been in exclusive possession of and had exclusively utilized the 8 acres situate in the SW¼ SE¼ for more than ten years preceding the filing of their complaint. These lands were at all material times fenced and placed in irrigated permanent pasture and irrigated crops by plaintiffs and their predecessors. Defendant testified she knew the location of the SW¼ SE¼. Over the years she saw that the 8 acres were fenced, controlled, used and possessed by plaintiffs' predecessors, but she at no time went to any of them and made claim to the lands.

William C. Schauer, Alamogordo, for defendant-appellant.

Bill G. Payne, Carrizozo, for plaintiffs-appellees.

Defendant's position is that the possession of the lands by plaintiffs and their predecessors was not under color of title, and that they had not paid the taxes thereon for ten years.

Deeds in statutory form dated July 1955 and July 1959 are the instruments relied upon to evidence color of title. The 1959 deed conveys approximately 3 acres of land lying immediately to the east of the tract conveyed by the 1955 deed. However, that small portion of the 8 acres in dispute included in the lands conveyed by the 1959 deed is of no particular significance to our problem here, since the question presented is that of the adequacy of the description of the lands in the two deeds. If the description in the 1955 deed is sufficient to give validity thereto as color of title, the description in the 1959 deed is equally valid for this purpose. Thus, we shall refer primarily to the description in the 1955 deed. The description of the property covered by that deed was:

"Part of a 20 acre tract lying and being north of and adjoining the right-of-way boundary line of U. S. Highway No. 380, in the SE¼ SE¼ - - - - - - - - - - - Sec. 6

"Twp. 8 S., Rg. 11 E., N.M.P.M. more particularly described as follows, to wit: Beginning at the point on the southwest corner of the above described tract, where it touches the right-of-way boundary line of U. S. Highway No. 380, which is point No. 1 of this tract;

"Thence along the north boundary line of said tract, in an easterly direction, a distance of 1300 feet, to point No. 2;

"Thence at right angle south, a distance of 470 feet to the right-of-way boundary line of Highway No. 380, to point No. 3;

"Thence along the right-of-way boundary line of said U. S. Highway No. 380, to point No. 1, the place of beginning."

It is apparent that the land described is in the shape of a right-angled triangle, with the right angle being the northeast corner of the tract. The southeast corner, or point No. 3 in the deed description, is the point at which the easterly line of this right-angled triangle intersects the north right-of-way boundary line of Highway No. 380. This point is 470 feet south of the northeast corner. The westerly point or corner of this triangle, which is the point of beginning of the deed description and is referred to as the "southwest corner," is 1300 feet west of the northeast corner and upon the north right-of-way boundary of the highway. The north right-of-way line of the highway constitutes the south line, or hypotenuse, of this right-angled triangle. This north line of the highway, and consequently the south line of the triangle, is a straight line, as evidenced by a survey plat of the highway and of that portion of the S½ SE¼ lying north of the highway. At the outset of the trial, this plat was offered and received into evidence by stipulation of the parties. There was no limitation upon this offer, and the plat was obviously before the district court and is before this court as evidence upon all issues in the case to which it has any relevance. Thus, we are concerned with a right-angled triangle whose sides are 1300 feet, 470 feet and 1382.35 feet in length. The area thereof in acres is 7.0133. A triangle of this type and dimensions, by using the north line of the SW¼ SE¼, which is an established survey line, as the north line of the triangle, and the point where this line touches the north boundary line of the highway as the point of beginning, which is consistent with the beginning point in the deed description, corresponds with the westerly and by far the greater portion of the triangular shaped portion of the SW¼ SE¼ lying north of the north boundary line of the highway. It appears from the plat and the acreage in the triangle described, that this 1955 deed did not cover the entire portion of the SW¼ SE¼ lying north of the highway, but that very small portion thereof which may not have been covered is the easterly most portion and this is covered by the 1959 deed.

In view of these circumstances, it appears to us that a surveyor could have gone upon the ground at the time of the

execution of either the 1955 or 1959 deed and very shortly have ascertained what lands were intended to be conveyed, and could have come only to the conclusion that the lands intended to be conveyed lie in the SW¼ SE¼, rather than in the SE¼ SE¼, except for the easterly and greater portion of the lands conveyed by the 1959 deed. Certainly, he could have come to no other conclusion after checking the evidence on the ground, such as the existing fences, growing crops, and the fact that the portion of the SW¼ SE¼ lying north of the highway was a triangular tract such as described. Inquiries of the grantors and grantees named in these deeds would have further confirmed this conclusion, as would the fact that the grantees went into possession of the lands in question pursuant to the grants in the deeds and remained in possession without objection or complaint from the grantors. See Marquez v. Padilla, 77 N.M. 620, 426 P.2d 593 (1967). In Hughes v. Meem, 70 N.M. 122, 125, 371 P.2d 235, 238 (1962) we quoted the following with approval from 16 Am.Jur., Deeds, § 262 (1938):

> " ' * * * The purpose of a description of the land, which is the subject matter of a deed of conveyance, is to identify such subject matter; and it may be laid down as a broad general principle that a deed will not be declared void for uncertainty in description if it is possible by any reasonable rules of construction to ascertain from the description, aided by extrinsic evidence, what property is intended to be conveyed. It is sufficient if the description in the deed or conveyance furnishes a means of identification of the land or by which the property conveyed can be located. * * * So, if a surveyor with the deed before him can, with the aid of extrinsic evidence if necessary, locate the land and establish its boundaries, the description therein is sufficient.' 16 Am.Jur. (Deeds) § 262."

See also State ex rel. State Highway Department v. Davis, 85 N.M. 759, 517 P. 2d 743 (1973); Quintana v. Montoya, 64 N.M. 464, 330 P.2d 549, 71 A.L.R.2d 397 (1958); Adams v. Cox, 52 N.M. 56, 191 P.2d 352 (1948); Garcia v. Pineda et al., 33 N.M. 651, 275 P. 370 (1929).

Besides, in her brief in chief, defendant " * * * submits that the descriptions in the deeds relied upon by Plaintiff are at best ambiguous and conflicting * * * and it was only by use of the highway map that the ambiguous descriptions might be construed to cover the lands in dispute."

We are not sure just which highway map defendant is referring to, but we assume she means a map which was apparently viewed by the district court by stipulation of the parties, but which map was not received into evidence and is not before us on this appeal.

Defendant then argues that the highway map could be used for the purpose of resolving the ambiguity only if it had been referred to in the deeds. We disagree with this contention. See State ex rel. State Highway Department v. Davis, supra; Hughes v. Meem, supra; Quintana v. Montoya, supra; Redfearn v. Kuhia, 50 Hawaii 77, 431 P.2d 945 (1967).

However, as above stated, the plat or map heretofore referred to was admitted into evidence for all purposes by stipulation. The highway and the lands in question are shown thereon, and this map, which is in evidence, serves equally well to resolve the ambiguity, or obvious mistake, in the deed description.

In addition, one of the witnesses called at trial was the grantee in the 1955 deed and also one of the grantees in the 1959 deed. This witness was also one of the grantors who conveyed the 17.917 acre tract to plaintiff by a deed executed in April 1972. This 17.917 acre tract was admittedly correctly described in this 1972 deed, and the lands in question are included therein.

This witness was expressly asked by both the plaintiffs and defendant, without objection, as to the location of the lands conveyed to him by the 1955 and 1959 deeds, and he identified these lands by reference to the plat which is in evidence. Thus, evidence was admitted, with-

out objection, whereby the lands described in the 1955 and 1959 deeds were unquestionably identified as including the 8 acres in question.

For the reasons stated, there can be no merit to defendant's first point relied upon for reversal.

Her second point is that the evidence fails to support the district court's finding to the effect that plaintiffs and their predecessors had paid taxes on the lands in question for ten years.

 The tax schedules for the years 1960 to 1972, covering the lands described in the 1955 and 1959 deeds, show the lands covered by the 1955 deed as 8 acres and the lands covered by the 1959 deed as 3 acres for a total of 11 acres. These tax schedules expressly refer to the metes and bounds descriptions contained in Book 37 at page 358 (the book and page of the deed records where the 1955 deed appears of record) and Book 44 at page 234 (the book and page of the deed records where the 1959 deed appears of record), except for the years 1962 to 1966 and 1968 to 1972. During these years, the page at which the 1955 deed appears of record is mistakenly shown on the tax schedules as *378* rather than *358*. However, the correct book number appears in all the schedules. Obviously, this has been a mistake by the office of the county assessor, in which these schedules were prepared. It is true the lands were described as being in the SE¼ SE¼ in accordance with the erroneous description in the deeds, but the approximately 11 acres, which is clearly the approximate acreage described in these deeds, were occupied by plaintiffs' predecessors, were under fence and were being cultivated and grazed by them. See Hobson v. Miller, 64 N.M. 215, 326 P.2d 1095 (1958); Frericks v. Sorensen, 113 Cal.App.2d 759, 248 P.2d 949 (1952).

There can be no reasonable doubt that plaintiffs' predecessors returned and paid taxes on 11 acres; the tax schedules prepared by the tax assessor related to the approximately 11 acres covered by the 1955 and 1959 deeds; and the only acreage which could have been covered by these schedules, returns and payments were the approximately 11 acres covered by these two deeds.

There is absolutely no merit to defendant's point 2.

Defendant asserts a third point for reversal. However, nothing is presented therein which is not dependent upon her claims as to color of title and taxes presented in the first two points, and we have resolved those claims against her.

The judgment should be affirmed.

It is so ordered.

STEPHENSON and MONTOYA, JJ., concur.