This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**TIMOTHY BRIGGS and**
**DEBORAH BRIGGS,**

    Plaintiffs-Appellants,

v.                                          **NO. 31,036**

**RONALD SMITH and**
**MARLENE SMITH,**

    Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**David I. Rupp, District Judge**

Charles E. Hawthorne, Ltd.
Charles E. Hawthorne
Ruidoso, NM

for Appellants

Law Office of Mark A. Reeves
Mark A. Reeves
Alamogordo, NM

for Appellees

**MEMORANDUM OPINION**

**KENNEDY, Chief Judge.**

{1}      In this case, we affirm the district court's determination that an assignment of interest in real property was both legally invalid and fraudulent, but reverse its order awarding attorney fees.  We also determine that the district court's denial of Plaintiffs' motion for a new trial was correct.

**I.      BACKGROUND**

{2}      Deborah Ras and Ronald Smith were single persons living together when they bought a piece of property pursuant to a real estate contract dated October 9, 2001.  Eventually, the property was paid off, and a warranty deed to Deborah Ras and Ronald Smith was delivered to her, but not ever recorded.  Deborah Ras later married Timothy Briggs and took his last name.  Ronald Smith continued to live on the property in a separate mobile home.

{3}      This case revolves around a document that is dated December 2004 and purports to be drafted by Ronald Smith to relinquish his interest in the property.  The document was witnessed by "Timothy D. Briggs" who, at that time, was Deborah's husband. On that document, under a signature of "Ronald W. Smith," is a handwritten notation of "Marlene Smith[,] wife."

**{4}** In 2010, Timothy Briggs and Deborah Briggs (Plaintiffs) instituted a quiet title suit for the property in question. The quiet title complaint asserted that Deborah is the owner of the property in fee simple by virtue of the real estate contract,[1] and the relinquishment document was an assignment of Ronald Smith's interest in the property. The complaint further alleged that the original contract was paid in full, and a warranty deed was issued from the sellers of the property to both Deborah Ras and Ronald Smith and tendered from escrow. The complaint also alleged that Ronald Smith "paid nothing toward[] the purchase or maintenance of the [p]roperty" and requested that the district court declare Plaintiffs as owners of the property. The complaint named Ronald Smith and Marlene Smith (Defendants), although it referred only to Ronald and alleged no action on Marlene's part connecting her to the property.

**{5}** Defendants answered, denying that there had been any "assignment" signed by them and asserting an interest in the property while counter-claiming for fraud and requesting partition or sale of the land. It is not disputed that Marlene did not know Ronald Smith in 2004 when the relinquishment document was allegedly signed. To

---

[1]Yet, inexplicably, the complaint is brought in the name of Timothy Briggs and Deborah Briggs and prays that Plaintiffs be declared owners of the property. Nowhere is Timothy Briggs' interest in the property described in the complaint's allegations.

the extent that other facts are needed to explain our decision, they will be discussed below as needed.

{6}      Defendants prevailed at trial.  The district court found that the relinquishment document was fraudulent and awarded them a half interest in the property and ordered its sale, also giving them attorney fees.  Plaintiffs filed this appeal.

## II.    DISCUSSION

{7}      As a preliminary matter, we suggest that Defendants' brief does not conform with the form requirements required of briefs filed in our appellate courts, Rule 12-305 NMRA, and both parties' briefs could have profited from closer adherence to the briefing requirements of Rule 12-213 NMRA.

{8}      Plaintiffs contest the district court's decision in three respects:  (1) its finding that the relinquishment document was fraudulent, (2) the district court's ruling that the document insufficiently described the subject matter of the "assignment" was not supported by substantial evidence, and (3) the attorney fees were not warranted.  We address each in turn, in the process determining that the district court did not abuse its discretion in denying Plaintiffs' motion for a new trial.

## A.    Substantial Evidence of Fraud

{9}      Plaintiffs' brief invites us to conduct a substantial evidence review concerning the district court's finding that the appearance of Marlene Smith's name on the

4

relinquishment was fraudulent. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 1990-NMSC-114, ¶ 7, 111 N.M. 137, 802 P.2d 1283. "[We] will not disturb findings, weigh evidence, resolve conflicts[,] or substitute [our] judgment as to the credibility of witnesses where evidence substantially supports findings of fact and conclusions of law of the [district] court." *Sternloff v. Hughes*, 1978-NMSC-032, ¶ 23, 91 N.M. 604, 577 P.2d 1250. We therefore review with deference the district court's decision that clear and convincing evidence supported its finding that the relinquishment document was fraudulent because of "inter alia, Defendant [M]arlene Smith's alleged signature appearing on this writing."

{10}     The district court's unfortunate use of the Latin phrase, "inter alia," injects some ambiguity into what seems to be a finding based on no more than the impossibility of Marlene Smith signing a document some four years before she even knew Ronald Smith. However, the evidence, with all reasonable inferences deducible therefrom, is viewed in the light most favorable in support of the findings and the prevailing party. *Weidler v. Big J Enters., Inc.*, 1998-NMCA-021, ¶ 30, 124 N.M. 591, 953 P.2d 1089 ("In reviewing a sufficiency of the evidence claim, [the reviewing c]ourt views the evidence in a light most favorable to the prevailing party and disregards any inferences and evidence to the contrary." (alteration, internal quotation

marks, and citation omitted)). As we describe below, there was substantial evidence to support this findings of fact, and we find support for the district court's conclusion.

{11}     Plaintiffs argue that the only evidence that indicated how Marlene Smith's name appeared on the document was Ronald Smith's testimony that he did not know her in 2004. This is inaccurate. Marlene also testified that she did not sign the document and did not know Ronald until some three or four years later. Alternatively, Deborah Briggs testified that Ronald prepared the document on her computer on the day it was signed, although she did not watch him do it. Timothy Briggs testified that Ronald had approached them in December 2004, outside of their house, said that he wanted to give them a wedding gift, and gave them the relinquishment, which they then signed and witnessed. Clearly, there was no evidence presented that Marlene had signed the document.

{12}     The district court could have concluded that, if the document was drafted, signed, witnessed, and tendered to Plaintiffs by Ronald Smith alone, Marlene Smith's signature was not on it at the time it was executed. No evidence was presented at trial that it was not a signature. The absence at trial of an alternative explanation also supports the finding that it was not Marlene's signature and, hence, was fraudulent. The facts presented to the district court at trial support the conclusion that there was

6

no legitimate reason for Marlene's signature to appear on the document, and the district court acceptably relied on these facts in finding that Marlene's signature was fraudulent, stating that "whoever prepared this document . . . reached a bit too far by adding that signature." Supporting another more general aspect of possible fraud, Ronald further testified on cross-examination that he had not signed the document, and the signature on it did not match a signature he acknowledged to be his on a bank document shown to him by Plaintiffs' counsel. Again, the district court's possible determination that Ronald was more credible than Plaintiffs is not something we disturb on appeal.

{13}     Problems with the relinquishment were apparent from the earliest moments in this case. Yet, Plaintiffs seem to have ignored such warnings. Plaintiffs had been on notice since Defendants' answer that both Defendants denied signing the document and alleged fraud in its preparation. The document had been attached as an exhibit to Plaintiffs' complaint, and it was admitted as evidence at trial. Given Plaintiffs' testimony about its provenance and Defendants' opposing testimony that the signatures were not theirs, the district court was free to resolve the facts as it believed them most credible. The origin of the document and the signatures were resolved within the district court's purview. The appearance after the trial of evidence that Marlene Smith's signature was a notation by Plaintiffs' counsel's legal assistant, as

7

we discuss below, is of no consequence to this calculus. We believe substantial evidence existed at trial from which the district court could determine by clear and convincing evidence that the relinquishment document was fraudulently created.

**B.    Denying the Motion for a New Trial Was Not an Abuse of Discretion**

{14}    Related to Plaintiffs' dissatisfaction with the district court's findings is the late-appearing matter of the source of Marlene Smith's name on the document. Although largely apocryphal to the finding of fraud, aspects of the district court's ruling and the parties' discussion of the evidence are illustrative of why the district court ruled correctly and bear discussion here.

{15}    Having eschewed any concern for its authenticity that may have arisen from Defendants' denial that they had signed anything and their allegation of fraud, Plaintiffs proceeded to trial and lost. Plaintiffs promptly filed a motion for a new trial, asserting that they were not allowed to argue at trial the effect of the evidence presented, and they had discovered that Marlene had indeed not signed the relinquishment, but that Plaintiffs' counsel's legal assistant was the source of Marlene's name on the document. Plaintiffs have not included mention in their appellate brief of the portion of the motion concerning the denial of closing argument, and we consider it abandoned. *See State v. Flanagan*, 1990-NMCA-113, ¶ 1, 111 N.M. 93, 801 P.2d 675 ("Issues not briefed on appeal are deemed abandoned.").

Furthermore, "[the appellate courts] will not disturb a [district] court's exercise of discretion in denying or granting a motion for a new trial unless there is a manifest abuse of discretion." *State v. Garcia*, 2005-NMSC-038, ¶ 7, 138 N.M. 659, 125 P.3d 638.

{16} Plaintiffs make passing mention of proposed findings of fact and conclusions of law without citing to the record where they may exist, and we have not seen any in the record. Rule 12-213(A)(4) (requiring briefs contain citations to the record proper). Facts alleged to be different than those in the judgment as contained in the motion for new trial are insufficient. The district court, in its order denying Plaintiffs' motions for new trial and to dismiss claim for attorney fees, considered the new evidence Plaintiffs offered at the post-trial hearing. The district court found that it was not persuaded by Plaintiffs' new evidence, and the relinquishment document was fraudulent.

{17} We question whether the signature issue is newly discovered evidence at all. A motion for a new trial based on newly discovered evidence is addressed to the district court's discretion. Rule 1-059 NMRA; *Pena v. Westland Dev. Co.*, 1988-NMCA-052, ¶ 14, 107 N.M. 560, 761 P.2d 438. To have prevailed on the motion, Plaintiffs would have had to demonstrate that (1) any new evidence would probably change the result, (2) it has been discovered since the trial, (3) it could not have been discovered before

9

trial through the exercise of due diligence, (4) it is material to the issues in the case, (5) it is not merely cumulative, and (6) it is not merely impeaching or contradictory. *Mitchell v. Forster*, 1955-NMSC-027, ¶ 14, 59 N.M. 226, 282 P.2d 708.

{18}     The fact that an annotation by Plaintiffs' counsel's legal assistant, but not a signature, was later ascertained to have placed Marlene Smith's name on the document was not raised at trial, even though it was an obvious problem from the time of Defendants' answer. *See Sandoval v. Sandoval*, 1956-NMSC-027, ¶ 9, 61 N.M. 38, 294 P.2d 278 ("To warrant the granting of a new trial [on ground of newly discovered evidence], it must appear that the testimony relied on has been discovered since the trial and that failure to produce it was not due to lack of due diligence."). The provenance of the writing was a fact able to be ascertained well in advance of trial. Irrespective of Marlene's name on the document, the district court remained free to believe that Ronald Smith's signature on the document was not his and Plaintiffs' testimony of how the document came to be was not credible. The district court was free to reject this evidence, as it did, twice.

{19}     Despite Plaintiffs' complaint that the testimony of the legal assistant at the hearing on the motion for a new trial was given no credence by the district court, we conclude that, based on the above discussion concerning the court's prerogative to weigh evidence and resolve conflicts in it, the legal assistant's participation in altering

the relinquishment was not credible, material, nor newly discovered evidence, so as to either negate the effect of the evidence of fraud found by the district court or give justification for a new trial.

**C. The Relinquishment is Not an Assignment**

{20} The relinquishment document, contrary to Plaintiffs' assertion in the complaint and throughout, is nowhere close to an assignment, as it does not designate to whom it assigns the property interest. *See Benton v. Albuquerque Nat'l Bank*, 1985-NMCA-039, ¶ 13, 103 N.M. 5, 701 P.2d 1025 ("An assignment is an act or expression of intention by which one person causes a transfer of a right or interest in property."); *see also* UJI 13-818 NMRA. Thus, an assignment may be a relinquishment of an interest, but this relinquishment without language regarding a transfer of interest is no assignment.

{21} Plaintiffs' confusion applies equally to the assertion that, if the assignment failed, it represented a gift. A document that purports to unconditionally sacrifice an interest in property by relinquishment without any transfer is neither an assignment nor a gift. To the extent that it was not an assignment, Plaintiffs' assertion that the district court erred in finding that the document insufficiently described the premises fails. There was no assignment or transfer of an interest in the property by which Plaintiffs could assert an interest. As cited by Plaintiffs to support the creation of a

gift, *Kinney v. Ewing*, 1972-NMSC-001, 83 N.M. 365, 492 P.2d 636, and *In re Estate of Martinez*, 1981-NMCA-081, 96 N.M. 619, 633 P.2d 727, are inapposite, as both cases deal with explicit transfers. We need not pursue Plaintiffs' legally unsupported relinquishment to no one as a gift any further. *Chisos, Ltd. v. JKM Energy, L.L.C.*, 2011-NMCA-026, ¶ 28, 150 N.M. 315, 258 P.3d 1107 ("We need not and do not address arguments that are not supported by authority."). Hence, any concerns as to the description of the property are superfluous.

**{22}** Regardless of this misconstruction of the relinquishment as either assignment or gift, the document was attached to the complaint and entered into evidence under the guise of an assignment. As described above, clear and convincing evidence established that Marlene Smith had no contact with the document that purported to relinquish Ronald Smith's rights in the property. The district court determined the document to be fraudulent, it appears, because her name's appearance on the document was of undeterminable provenance, although it made no specific finding that Ronald had not signed it. Plaintiffs' counsel never questioned the quality of that document, even though they had much reason to do so pretrial. Apparently, no discovery was conducted on the matter in or out of Plaintiffs' counsel's office.

## D. Attorney's Fees Were Not Properly Awarded

{23} Plaintiffs also argue that the district court erred in awarding Defendants attorney fees and costs. "New Mexico adheres to the . . . rule that, absent statutory or other authority, litigants are responsible for their own attorney fees." *Bernier v. ex rel. Bernier*, 2013-NMCA-074, ¶ 26, 305 P.3d 978 (alterations, internal quotation marks, and citation omitted). Defendants seem to have no problem with the general rule, believing that, by either of two approaches, they are entitled to permissible attorney fees by statute where a case concerns a quiet title action. Defendants also urge the propriety of attorney fees as a sanction resulting from a fraud on the court. We disagree that either works.

{24} Working from back to front, we note that the parties agree that *Garcia v. Coffman*, 1997-NMCA-092, ¶ 44, 124 N.M. 12, 946 P.2d 216, holds that fees are "*generally* not recoverable in New Mexico on claims of fraud[.]" (Emphasis added.) "Fraud upon the court occurs where there is a deliberately planned and carefully executed scheme to defraud the court, not simply a judgment obtained with the aid of a witness whose perjury is revealed by after-discovered evidence." *Moya v. Catholic Archdiocese of N.M.*, 1988-NMSC-048, ¶ 8, 107 N.M. 245, 755 P.2d 583. We have clearly stated that fraud upon the court requires an extreme case "in which there is a concerted plan to defile the court itself." *In re Drummond*, 1997-NMCA-094, ¶ 9, 123

13

N.M. 727, 945 P.2d 457. This is not such a case, despite the district court having used the language "fraudulent document presented to the court" in a way Defendants consider to be talismanic, although its written order only refers to the document as fraudulent. To the extent that the district court based fees on "a fraudulent document presented to [the] court" to justify attorney fees, the document was false evidence offered as proof of a matter in dispute and not the perpetration of a fraud upon the court. A district court's oral pronouncements are not final until they are put into writing. *See State v. Lohberger*, 2008-NMSC-033, ¶ 20, 144 N.M. 297, 187 P.3d 162. Here, the fraud concerned the district court's finding that the use of a document constituted a fraud on a party for which judgment was received as in *Garcia*. 1997-NMCA-092, ¶ 44. It is not a fraud on the court. The district court did not so find in its judgment, and we reject Defendants' assertion in that regard.

{25}   Next, the district court's award of attorney fees did not specify a basis for the award in its written order, just that the fees "should be awarded to . . . Defendants[,]" although it orally ruled that the award was for presenting a fraudulent document. Defendants cite to *Robertson v. Carmel Builders Real Estate*, in which "we do not address the overall propriety of attorney fees in a fraud case," to incorrectly support a general entitlement to fees. 2004-NMCA-056, ¶ 47, 135 N.M. 641, 92 P.3d 653. Similarly, Defendants' suggestion that NMSA 1978, Section 42-6-10 (1909), which

14

may allow Defendants' counsel to sue to foreclose on a contract by his clients to pay for his services in land does not establish a right to an award of attorney fees from opposing parties in litigation. Defendants have failed to demonstrate that, beyond their own say-so, a finding of fraud is sufficient to abrogate the general rule against awarding fees absent some specific justification. Plaintiffs have been steadfast in their assertion that attorney fees are precluded in this case as a matter of law, and Defendants never provided any legal justification to award them. In the absence of a fraud upon the court and any other stated justification, we must reverse the district court's award of attorney fees.

## III.  CONCLUSION

{26}    The judgment of the district court rests upon substantial evidence and is affirmed. Its award of attorney fees is reversed, and the matter remanded for the judgment to be corrected to reflect our ruling.

{27}    **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Chief Judge**

15

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**MICHAEL E. VIGIL, Judge**